UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FAROULH DORLETTE,
    *Plaintiff*,

v.

DISCIPLINARY INVESTIGATOR
MELENDEZ, *et al.*,
    *Defendants*.

No. 3:15-cv-1856 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Faroulh Dorlette ("Plaintiff") initiated this action *pro se* while incarcerated at the MacDougall-Walker Correctional Institution ("MacDougall-Walker") in Suffield, Connecticut, but now has counsel. Mr. Dorlette's lawsuit arises under 42 U.S.C. § 1983 and alleges that Disciplinary Investigator Melendez, Hearing Officer Richardson, and District Administrator Angel Quiros (collectively "Defendants") violated Mr. Dorlette's right to procedural due process under the Fourteenth Amendment.

Defendants have moved for summary judgment.

For the following reasons, Defendants' motion for summary judgment is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

###    A.    Factual Background

Mr. Dorlette is in the custody of the Connecticut Department of Correction ("DOC"), and he challenges the prison conditions and process he received surrounding the DOC's adjudication of a disciplinary report. L. R. 56(a)2 Statement of Facts in Opp'n to Summ. J., ECF No. 105-1 ¶¶ 1, 3, 6 (Feb. 6, 2020) ("Pl.'s SMF").

In a "Notice to Population" dated February 19, 2014, the DOC prohibited the mailing of certain unauthorized items. Ex. D, Notice to Population, ECF No. 89-5 at 17 (Feb. 19, 2014) ("Notice to Population"). The Notice to Population stated in its entirety:

> As a reminder, outgoing social correspondence shall only consist of general correspondence.
>
> Under no circumstances is any item to be mailed out with any outgoing social correspondence, i.e. handkerchiefs, homemade crosses, etc.
>
> Authorized items needing to be mailed out should be arranged through the Unit Management staff in accordance with Administrative Directive 6.10, Inmate Property.
>
> Any outgoing social correspondence with unauthorized items will be rejected.

*Id.*

Mr. Dorlette alleges that he was not in MacDougall-Walker when the Notice to Population was allegedly posted on bulletin boards and never saw this Notice to Population before the date in question. Pl.'s SMF at Add'l Material Facts ¶¶ 15-16. Based on Mr. Dorlette's alleged risk group placement leading up to and at the time of the alleged infraction, he allegedly "did not have freedom to move throughout the prison" and "was not permitted to stop at bulletin boards to read notices thereon." *Id.* at Add'l Material Facts ¶¶ 20-21.

On October 24, 2014, Officer Tyburski issued a disciplinary report ("Disciplinary Report") to Mr. Dorlette for attempting to mail an unauthorized item—a soup seasoning packet—out through the prison mail. Pl.'s SMF ¶¶ 11-14. The Disciplinary Report was issued for alleged Security Tampering, which is a Class A offense. *Id.* ¶ 10. Mr. Dorlette maintains he was requesting an updated brochure from a prison pen-pal service, Prison Inmates Online, and did not send or attempt to send an unauthorized item out through the mail as alleged in the process

surrounding the Disciplinary Report. *Id.* ¶ 28; *see also id.* at Add'l Material Facts ¶¶ 1-7 (claiming that it was highly unlikely Mr. Dorlette had a soup seasoning packet at his disposal and referencing Prison Inmates Online).

The DOC assigned an Investigator Melendez to the Disciplinary Report. *Id.* ¶¶ 15-16. Investigator Melendez met and spoke with Mr. Dorlette and issued a report and recommendation, but allegedly did not investigate or do anything else besides review Officer Tyburski's written accusation. *Id.* ¶ 17. Investigator Melendez's report recommended a finding of guilty, as well as sanctions, which included "20 days loss of phone privileges, 60 days loss of visitation, 60 days loss of mail privileges, 60 days loss of commissary privileges, and 10 days forfeiture of risk reduction earned credits." *Id.* ¶¶ 19-20.

Mr. Dorlette stated to Investigator Melendez that Mr. Dorlette would talk to his advocate about the incident. *Id.* ¶ 18. The DOC also allowed Mr. Dorlette to choose an advocate to assist him with the disciplinary report process, and Mr. Dorlette chose Advocate Maiorana, with whom he allegedly met only once before the hearing. *Id.* ¶¶ 21-23. Mr. Dorlette provided Advocate Maiorana with a three-page handwritten statement that he wished to be presented to the hearing officer. *Id.* ¶ 24. Advocate Maiorana completed a report and provided it to the hearing officer. *Id.* ¶ 26. Although Mr. Dorlette's statement was attached to Advocate Maiorana's report, Mr. Dorlette alleges that the hearing officer did not consider it. *Id.* ¶ 25.

Advocate Maiorana did not recommend a finding of guilty, and instead "did nothing," deferring to the discretion of the hearing officer. *Id.* ¶ 27. Mr. Dorlette maintains that Officer "Tyburski was either mistaken, or intentionally making up the charge," and consequently, he pled "not guilty" to the Disciplinary Report. *Id.* ¶¶ 29-30.

On or about November 20, 2014, a hearing was held regarding the Disciplinary Report, with Hearing Officer Richardson presiding as hearing officer. *Id.* ¶¶ 31-33. Also present at the hearing were Mr. Dorlette, Advocate Maiorana, and Investigator Melendez. *Id.* ¶ 38. At the hearing, Mr. Dorlette had his three-page written statement presented, and he also "testified and told his version of events." *Id.* ¶¶ 35-36. Mr. Dorlette did not call other witnesses. *Id.* ¶ 37. Hearing Officer Richardson found Mr. Dorlette guilty and issued the following sanctions: "20 days punitive segregation, 60 days loss of mail privileges, and 10 days forfeiture of risk reduction earned credits." *Id.* ¶¶ 41-43. According to Mr. Dorlette, during the twenty days of punitive segregation, he was also "deprived of commissary, visitation, and phone privileges," as well as other "extremely difficult conditions of confinement." *Id.* at Add'l Material Facts ¶ 31.

Mr. Dorlette alleges that it was not a real hearing and that there was no legitimate finding of guilt. *Id.* ¶ 31. According to Mr. Dorlette, the DOC did not produce any evidence at the hearing, and no one testified against him at the hearing. *Id.* ¶ 44; *id.* at Add'l Material Facts ¶¶ 25-27. Mr. Dorlette also alleges that Advocate Maiorana "did nothing to actually advocate for" him, and despite his many requests to see the alleged seasoning packet found in his mail, it was never shown to him before the hearing. *Id.* at Add'l Material Facts ¶¶ 8-10, 24, 28. According to Defendants, Hearing Officer Richardson "made his decision and issued his sanctions based on evidence presented at the hearing, which included plaintiff's three-page statement . . . and also included the documentation and reports submitted by DOC staff." L. R. 56(a)1 Statement of Undisputed Material Facts, ECF No. 90 ¶ 44 (Nov. 7, 2019) ("Defs.' SMF").

On or about November 20, 2014, Mr. Dorlette received notice of the hearing outcome, as well as information on how to appeal his guilty determination. Pl.'s SMF ¶¶ 45-47. Mr. Dorlette appealed, but he was unsuccessful in overturning his guilty determination. *Id.* ¶ 48. District

4

Administrator Quiros allegedly failed to respond or "acknowledge [Mr. Dorlette's] disciplinary appeal." Compl., ECF No. 1 ¶¶ 6, 20 (Dec. 22, 2015).

Mr. Dorlette sought a writ of *habeas corpus* in Connecticut State Superior Court based upon the same Disciplinary Report, but he denies that the parties were the same, the nature of the lawsuit was the same, the allegations were the same, or that the requested relief was the same. *Id.* ¶¶ 49-50. Mr. Dorlette's *habeas* action, No. TSR-CV15-4006924-S, proceeded to judgment, including a trial on the merits before the Honorable Vernon D. Oliver. *Id.* ¶¶ 52-53. During the trial, Mr. Dorlette "presented evidence, testified himself, cross examined the Commissioner of Correction's witnesses, *voir dired* evidence presented by the Commissioner of Correction, and . . . also provided closing argument." *Id.* ¶ 55. Mr. Dorlette alleges that the first time he was shown the seasoning packet was during these habeas proceedings, and that it was only a "photocopy of the alleged packet." *Id.* at Add'l Material Facts ¶¶ 12, 29. Although Mr. Dorlette admits that Judge Oliver "specifically heard argument on whether the process that [he] received surrounding his [Disciplinary Report] complied with standards detailed in *Wolff v. McDonnell*, 418 U.S. 539 (1974)," he disputes that Judge Oliver "applied the correct standard." *Id.* ¶ 56.

On June 14, 2017, Judge Oliver issued a memorandum of decision and ruled against Mr. Dorlette, finding that Mr. Dorlette "received all of the process to which he was constitutionally entitled." *Dorlette v. Warden*, No. TSR-CV15-4006924-S, 2017 WL 3011610, at *3 (Conn. Super. Ct. June 14, 2017).

Mr. Dorlette failed to timely appeal Judge Oliver's decision of his *habeas* action, and on November 8, 2017, the Connecticut Appellate Court dismissed his appeal because it was untimely. Pl.'s SMF ¶¶ 63-67.

Mr. Dorlette alleges that "[t]o the present date the seasoning packet has never been produced at any hearing, nor shown to Plaintiff, nor to any of his attorneys or 'advocates.'" *Id.* at Add'l Material Facts ¶ 30. He contends that he had no motive to mail a packet of seasoning to the pen pal service, *id.* at Add'l Material Facts ¶¶ 5-6, and that at the time of the alleged infraction, he was "highly motivated to avoid getting any disciplinary tickets," because he would soon qualify to move from Stage I to Stage II of administrative segregation confinement, which was a less restrictive form of incarceration, *id.* at Add'l Material Facts ¶ 13.

B. **Procedural History**

On December 22, 2015, Mr. Dorlette, while incarcerated at MacDougall-Walker, filed a Complaint against Officer Tyburski, Disciplinary Investigator Melendez, Hearing Officer Richardson, Angel Quiros, and Scott Semple in their individual and official capacities, alleging under 42 U.S.C. § 1983 that they violated his procedural due process rights under the Fourteenth Amendment. *See generally* Compl.

On February 3, 2016, the Honorable William I. Garfinkel granted Mr. Dorlette's updated motion for leave to proceed *in forma pauperis*. Order, ECF No. 10 (Feb. 3, 2016).

On October 17, 2016, the Court issued an initial review order permitting Mr. Dorlette's procedural due process claims to continue against Defendants Disciplinary Investigator Melendez, Hearing Officer Richardson, and District Administrator Quiros in their individual and official capacities. Initial Review Order, ECF No. 13 (Oct. 17, 2016). The Court dismissed all claims against Officer Tyburski and Commissioner Semple under 28 U.S.C. § 1915A(b)(1). *Id.*

On January 29, 2018, after granting and denying in part Defendants' motion to dismiss, *see* Order, ECF No. 39 (Jan. 2, 2018), and directing Mr. Dorlette to submit a notice stating whether he waived for all time the claims relating to disciplinary actions imposed on November

20, 2014, *id.*; *see also* Notice, ECF No. 43 (Jan. 19, 2018); the Court found that Mr. Dorlette's notice failed to waive those claims that affect the duration of his confinement. Order, ECF No. 44 (Jan. 29, 2018). As a result, the Court dismissed the due process claims relating to the November 20, 2014, disciplinary disposition by Investigator Melendez and Hearing Officer Richardson and the appeal of it to District Administrator Quiros. *Id.* at 3. The Court held that Mr. Dorlette's case would proceed "only as to the Fourteenth Amendment procedural due process claim against Defendants Melendez, Richardson, and Quiros relating to the November 20, 2014, guilty finding and imposition of sanctions of twenty days of punitive segregation and sixty days loss of mail privileges," which were the only sanctions affecting Mr. Dorlette's conditions of confinement. *Id.*

On August 27, 2019, the Court *sua sponte* appointed counsel to Mr. Dorlette "for the limited purpose of addressing any dispositive motions." Order, ECF No. 83 (Aug. 27, 2019).

On November 1, 2019, Defendants moved for summary judgment, and filed a supporting memorandum, several exhibits, and a statement of material facts. Mot. for Summ. J., ECF No. 89 (Nov. 1, 2019); Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 89-1 (Nov. 1, 2019) ("Defs.' Mem."); L. R. 56(a)1 Statement of Undisputed Material Facts, ECF No. 90 (Nov. 7, 2019) ("Defs.' SMF").

On January 27, 2020, the Court *sua sponte* ordered that, "given the age of the case, the Court will not entertain any motions to amend the Complaint until after the pending motion for summary judgment is resolved." Order, ECF No. 104 (Jan. 27, 2020).

On February 6, 2020, Mr. Dorlette timely opposed the motion for summary judgment and filed his supporting memorandum, several exhibits, and response to Defendants' statement of material facts. Mem. of Law in Supp. of Pl.'s Obj. to Mot. for Summ. J., ECF No. 105 (Feb. 6,

2020) ("Pl.'s Opp'n"); L. R. 56(a)2 Statement of Facts in Opp'n to Summ. J., ECF No. 105-1 (Feb. 6, 2020) ("Pl.'s SMF").

On February 24, 2020, Defendants replied. Reply, ECF No. 108 (Feb. 24, 2020) ("Defs.' Reply").

On February 26, 2020, the Court held a hearing on the motion for summary judgment. Minute Entry, ECF No. 109 (Feb. 26, 2020).

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be

8

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Mr. Dorlette's remaining claim is a Fourteenth Amendment procedural due process claim relating to the November 20, 2014, guilty finding and imposition of sanctions of twenty days of punitive segregation and sixty days loss of mail privileges, which are the sanctions that affect his conditions of confinement.

In moving for summary judgment, Defendants argue: (1) there is no genuine dispute of material fact that Mr. Dorlette received sufficient process; (2) his claims for money damages are precluded and barred by the collateral estoppel doctrine; (3) all Defendants are entitled to qualified immunity; (4) the Eleventh Amendment bars the injunctive relief Mr. Dorlette seeks; and (5) the Prison Litigation Reform Act bars the injunctive relief Mr. Dorlette seeks.

### A. Procedural Due Process

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

To succeed on a Section 1983 claim "for denial of due process arising out of a disciplinary hearing, a plaintiff must establish that he (1) possessed an actual liberty interest and (2) was deprived of that interest without being afforded sufficient process." *Williams v. Chuttey*, 767 F. App'x 105, 107 (2d Cir. 2019) (summary order) (citing *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004)). The liberty interest must "subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Mr. Dorlette emphasizes that the accusation itself—attempting to send a soup seasoning packet in the mail—is "bizarre and petty." Pl.'s Opp'n at 5. According to Mr. Dorlette, "the record showed absolutely no motive for the alleged act, but rather real and earnest motivation not to commit any infractions, much less a ridiculous and meaningless infraction." *Id.* at 6.

According to Mr. Dorlette, at the time he was accused, he was two weeks shy of completing four months of good behavior, which would have allowed him to move from Phase I to Phase II's less restrictive and onerous confinement. *Id.* at 3. He submits that he lost this opportunity, was instead placed in punitive segregation for twenty days. *Id.* Mr. Dorlette describes the experience of prisoners in punitive segregation as follows:

> [T]heir hands are chained behind their back and a chain (commonly called a 'tether') is attached from the handcuffs behind his back to leg irons. They cannot order Commissary items and thus *de facto*, are deprived of Commissary Privileges. They cannot possess any property except [two] sets of clothes and limited hygiene items. They are not allowed stationary except what a DOC counselor might choose to give them. They lose telephone privileges and cannot receive visitors.

*Id.* As a result, Mr. Dorlette argues that he "suffered significant loss of liberty" as a result of his "flawed proceedings." *Id.*

The Court disagrees.

"Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)). In *Sandin*, the Supreme Court found that neither state regulations nor the Due Process Clause created a liberty interest for a

prisoner in avoiding thirty days' disciplinary confinement in a special housing unit, or punitive segregation. 515 U.S. at 484-88.

In Mr. Dorlette's case, the twenty-day duration of his punitive segregation was shorter than the thirty days at issue in *Sandin*, and although Mr. Dorlette asserts differences in conditions, "comparable periods and conditions of segregation do not amount to a deprivation of a liberty interest." *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (per curiam). Mr. Dorlette does not describe how punitive segregation compares to the conditions of the general population, and significantly, he does not compare punitive segregation to his prior confinement in Phase I. Although Mr. Dorlette describes being restrained by chains and leg irons for those twenty days, the prisoner in *Sandin* was similarly "constrained by leg irons and waist chains," and spent his "entire time alone in his cell . . . with the exception of 50 *minutes* each day on average for brief exercise and shower periods." *See* 515 U.S. at 493 (Breyer, J., dissenting) (emphasis in original) (describing the prisoner's confinement conditions).

Because Mr. Dorlette has failed to create a genuine dispute of material fact as to his confinement conditions, and hence a protected liberty interest, the Court consequently has no basis on which to find that the conditions he describes are an "atypical and significant hardship." *Sandin*, 515 U.S. at 484; *see Hynes*, 143 F.3d at 658 (affirming district court's finding because the prisoner "offered no evidence in support of his argument that his 21-day keeplock confinement was atypical or significant, notwithstanding his familiarity with the conditions of his own confinement"); *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (describing the conditions of a prisoner's placement in administrative segregation in a special housing unit as "doubtless unpleasant and somewhat more severe than those of general population," but affirming that "the degree of incremental harshness, endured for 101 days, is not an 'atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life'" (quoting *Sandin*, 515 U.S. at 484)); *Smith v. Arnone*, 700 F. App'x 55, 56 (2d Cir. 2017) (summary order) (finding that the prisoner "failed to dispute a material issue of fact regarding whether his confinement" implicated a protected liberty interest because "[t]he record demonstrates that his punishment for this disciplinary infraction was 30 days' punitive segregation," and there was "no evidence demonstrating that [these] conditions . . . were more onerous than usual restrictive confinements"); *Black v. Selsky*, 15 F. Supp. 2d 311 (W.D.N.Y. 1998) ("while Black's confinement to SHU was more restrictive than confinement in general population, the restrictions do not appear to be any greater than the restrictions imposed on the inmate in *Sandin*").

As a result, there is no genuine dispute of material fact regarding whether the twenty days of punitive segregation and sixty days loss of mail privileges infringed on a protected liberty interest of Mr. Dorlette's—they did not.

Accordingly, Mr. Dorlette's procedural due process claim must be dismissed.[1]

**B. Qualified Immunity**

Even if Mr. Dorlette's procedural due process claim had legal merit, Defendants may be entitled to qualified immunity, at least with respect to Mr. Dorlette's request for monetary damages.

"Qualified immunity protects federal and state officials from money damages and unnecessary and burdensome discovery or trial proceedings." *Coollick v. Hughes*, 699 F.3d 211,

---

[1] As a result of dismissing Mr. Dorlette's procedural due process claim, his related claims for injunctive relief—including any relief related to the Disciplinary Report or for release to the general population—also are dismissed. **S**ignificantly, any relief for release to the general population would be moot because the twenty-day period of punitive segregation would have long since expired and, to the extent that Mr. Dorlette is currently not in the general population, there is nothing in this record to suggest that any such designation is related to anything regarding his claims in this case. *See Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

219 (2d Cir. 2012) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)) (internal quotation marks omitted); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (internal quotation marks omitted)). It "is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Coollick*, 699 F.3d at 219. If a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity. *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013).

When a court analyzes the question of whether public officials are entitled to qualified immunity, there are two issues that guide the inquiry. *See Zalaski v. City of Hartford*, 723 F.3d 382, 388-89 (2d Cir. 2013). First, the court considers whether "the facts show that the officer's conduct violated plaintiff's constitutional rights." *Id*. Second, if the answer is no, "further inquiry is unnecessary because [ ] there is no viable constitutional claim;" but if the answer is yes, "or at least not definitively no," the court may move on to the second question: "was the right clearly established at the time of defendant's actions?" *Id*.

Courts need not consider these two questions in order, and may consider the latter question first, which may be "particularly appropriate where the former turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct was not objectively unreasonable in light of existing law." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)) (internal quotation marks omitted). "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 149 S. Ct. 500,

501 (2019) (finding that defining the clearly established right as "the right to be free of excessive force" was too general).

The right at issue must be a "constitutional right[ ] of which a reasonable person would have known" and "reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal citations and quotations omitted). "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam). "For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question at issue beyond debate." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (citing *Ashcroft v. al-Kidd*, 653 U.S. 731, 735 (2011)).

Defendants first argue that because Mr. Dorlette fails to show a dispute of material fact over his due process claims, they are entitled to qualified immunity. Defs.' Mem. at 17-18. Second, Defendants argue that they did not violate a clearly established due process right. *Id.* at 19. Finally, Defendants contend that even if they violated Mr. Dorlette's right to procedural due process, they are entitled to qualified immunity because "[n]o authority of this Circuit or the Supreme Court clearly establishes that a correctional official commits a Due Process violation in the particular factual contexts alleged in this case." *Id.* at 21. According to Defendants, they "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Id.* at 23 (citations omitted). They emphasize that the DOC Administrative Directives "in and of themselves do not create private causes of action," *id.* at 24

n.6 (collecting cases), and that it was objectively reasonable for Defendants to believe that their conduct was lawful, *id.* at 25-28.

Mr. Dorlette argues that Defendants' failure to follow Administrative Directive 9.5, particularly "with respect to the production of the evidence and testimony," precludes them from obtaining qualified immunity. Pl.'s Opp'n at 24-25. According to Mr. Dorlette, "[t]here is no qualified immunity when the defendants violate rules of which they are fully aware." *Id.* at 25 (citing *Harnage v. Lightner*, No. 3:17-cv-263 (AWT), 2019 WL 319395 (D. Conn. Jan. 24, 2019)).

In reply, Defendants submit that Mr. Dorlette has failed to "identify a single precedential case addressing the right at issue in this case," which "is not enough to overcome" the Defendants' qualified immunity. Defs.' Reply at 5-6.

The Court agrees.

"The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)). The Court has already found that Mr. Dorlette does not have a procedural due process claim, because no protected liberty interest was implicated. Even if the Court found that Mr. Dorlette's protected liberty interest was implicated, however, he could only prevail if Defendants violated a clearly established constitutional right.

Mr. Dorlette argues that Defendants failed to follow Administrative Directive 9.5; prison rules and regulations, however, do not create private causes of action under Section 1983. *See Sandin*, 515 U.S. at 481-82 ("prison regulations" and such directives are "primarily designed to guide correctional officials in the administration of a prison," and are "not designed to confer

such rights on inmates"); *see also El-Massri v. New Haven Corr. Ctr.*, No. 3:18-cv-1249 (CSH), 2019 WL 3491639, at 10 (D. Conn. July 31, 2019) ("It is well-established that a claim that a state official failed to comply with his own agency's directives, policies, or procedures does not demonstrate the deprivation of a constitutionally or federally protected right." (internal citations omitted)); *Harris v. Armstrong*, No. 3:02-cv-665 (DFM), 2006 WL 861023, at *11 (D. Conn. Mar. 31, 2006) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." (quoting *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)); *Fernandez v. Armstrong*, No. 3:02-cv-2252 (CFD), 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005) ("failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983" (internal citations omitted)). As a result, any violation of Administrative Directives does not affect Defendants' entitlement to qualified immunity.

To the extent that Mr. Dorlette challenges the underlying Disciplinary Report itself as a violation of his due process rights, that argument also fails. A "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," such as the Disciplinary Report here, unless there is "retaliation against the prisoner for exercising a constitutional right." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citations omitted). To this date, Mr. Dorlette has not pursued a retaliation claim in this Court or in his prior *writ of habeas corpus* action, which also claimed various due process violations. As a result, the merit of the Disciplinary Report does not affect the Defendants' qualified immunity argument.

Finally, to the extent that Mr. Dorlette relies on *Shabazz v. Warden*, No. CV14406573, 2016 WL 5339522 (Conn. Super. Ct. Aug. 22, 2016) to assert the violation of a clearly

17

established due process right, that argument fails as well. "The Supreme Court has lately emphasized the breadth of qualified immunity protection." *Francis v. Fiacco*, 942 F.3d 126, 145 (2d Cir. 2019) (citations omitted). For a right to be clearly established, there must be binding precedent to put government officials on notice. *See, e.g.*, *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) ("A right is clearly established if . . . the Supreme Court or the Second Circuit has recognized the right. . . ."). "When neither the Supreme Court nor [the Second Circuit] has recognized a right," that right cannot be clearly established within the Second Circuit for qualified immunity purposes. *Pabon v. Wright*, 459 F.3d 214, 255 (2d Cir. 2006); *see also Tuttle v. Semple*, 2018 WL 705004, at *5 n.2 (rejecting plaintiff's cases because "district court decisions do not 'count' as 'clearly established' law for qualified immunity purposes" (citing *Pabon*, 459 F.3d at 255)). As a result, Mr. Dorlette has failed to create a genuine dispute of material fact that Defendants violated a clearly established right of his.

Accordingly, even if there were a dispute of material fact over Mr. Dorlette's procedural due process claim, there is no genuine dispute of material fact that Defendants are entitled to qualified immunity for any claims for monetary damages.[2]

### C. Leave to Amend

Under Rule 15 of the Federal Rules of Federal Procedure, a party "may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).

---

[2] Given that the Court has dismissed all of Mr. Dorlette's claims for other reasons, the Court need not and does not address Defendants' collateral estoppel argument.

In a footnote, Mr. Dorlette "renews his request for leave to amend his complaint to include allegations that the defendants' conduct was retaliatory and that the punishment inflicted infringed upon his eighth amendment rights." Pl.'s Opp'n at 27 n.4.

"[A] district court, despite the standard of the second sentence of Rule 15(a), does not abuse its discretion in denying leave to amend the pleadings where the moving party has failed to establish good cause, as required by Rule 16(b), to amend the pleadings after the deadline set in the scheduling order. . . . '[G]ood cause' depends on the diligence of the moving party." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). In exercising their discretion under Rule 16(b), courts "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 243.

In this case, the Court issued its initial review order on October 17, 2016, and since that date, Mr. Dorlette has not attempted to request leave to amend his Complaint to add these claims. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

Accordingly, consistent with this Court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), the Court will not grant leave for Mr. Dorlette to amend his Complaint.

## IV.　CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of February, 2020.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE